## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JEFFERY SHARP,                                          Case No. 1:14-cv-749

       Plaintiff,                                 Barrett, J.
                                                       Bowman, M.J.

  v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

### REPORT AND RECOMMENDATION

Plaintiff Jeffery Sharp filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes.  As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

### I.  Summary of Administrative Record

On September 9, 2010, Plaintiff protectively filed an application for Disability Insurance Benefits ("DIB").  Thereafter, on November 22, 2010, Plaintiff filed an application for Supplemental Security Income (SSI).  In both applications Plaintiff alleges a disability on set date of December 31, 2000.  Plaintiff's applications were denied initially and upon reconsideration. He then requested a hearing. Plaintiff appeared for a hearing before an administrative Law Judge ("ALJ") on January 3, 2013. The hearing was continued in order to update the record and obtain consultative

examinations. (Tr. 33). Accordingly, a second hearing on was held on April 11, 2013, at which Plaintiff was represented by counsel. (Tr. 31-72). At the hearing, the ALJ heard testimony from Plaintiff and Deborah Dutton-Lambert, an impartial vocational expert. On June 18, 2013, the ALJ issued an unfavorable decision denying Plaintiff's applications for SSI and DIB. (Tr. 14-25). Plaintiff now seeks judicial review of that decision.

The record on which the ALJ's decision was based reflects that Plaintiff was 41 years old at the time of the administrative hearing. He is a high school graduate. He previously worked as a short order cook, server, customer service representative, parking lot cashier and hand packager. According, to Plaintiff, he left his last job as a cook due to depression and paranoia.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "a depressive disorder, a bipolar disorder, an anxiety disorder, and a personality disorder." (Tr. 16). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following limitations:

> He can stand for one hour at a time for a total of six hours in an eight-hour workday, walk for one hour at a time for a total of six hours in an eight-hour workday, and sit for three hours at a time for a total of six hours in an eight-hour work day. In addition, he is limited to work that involves simple, routine, and repetitive tasks; performed in a low stress work environment, defined as free of fast paced production requirements, involving only simple work-related decisions, with few – if any – work place changes, no duties to engage in conflict resolution or persuading others to act in a

particular way, no interaction with the general public, and only occasional and superficial interaction with co-workers.

(Tr. 19).  Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff can perform jobs that exist in significant numbers in the national economy, including his past relevant work as a hand packager, as well a merchandise marker. (Tr. 24).  Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB or SSI.  *Id.*

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision stands as the Defendant's final determination.  On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) improperly evaluating Plaintiff's credibility; 2) failing to give controlling weight to the opinions of Plaintiff's treating physicians and 3) improperly relying on the testimony of the vocational expert.  Upon close analysis, I conclude that none of the asserted errors requires reversal or remand.

**II. Analysis**

**A.  Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

3

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that

4

claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

**B. Specific Errors**

1. *Weight assigned to the treating physician*

Plaintiff argues that the ALJ improperly weighed the opinion evidence. Specifically, Plaintiff asserts that the ALJ's evaluation of the findings of Dr. Shah, his treating psychologist, failed to comport with Agency regulations and controlling law. Plaintiff's contentions are not well-taken.

The record contains the following opinion evidence:

The vast majority of the medical evidence in this case originates from NorthKey Community Care ("NorthKey) where Plaintiff treated with Dr. Kline and other staff members.  Treatment notes indicate that Plaintiff's treatment regimen at NorthKey, which "included psychotherapy and prescribed psychotropic medication," continued through September 2010 "with some improvement noted." (Tr. 17, 21).  Indeed, the record reflects that Plaintiff had been off his bipolar medications at the time he began

treatment at NorthKey. (Tr. 345).  However, within weeks of resuming treatment, he was "pleasant" and "cooperative" and reported that he had been "pretty even keeled lately." (Tr. 363). He exhibited a subdued but appropriate affect; clear, coherent thoughts; no delusions, hallucinations, or suicidal/homicidal ideations; and good insight and judgment. (Tr. 363).  Dr. Kline assessed his Global Assessment of Functioning (GAF) score as 80[1]. (Tr. 364)

In February 2005, Plaintiff reported that his "mood has improved and he has occasional depressive episodes." (Tr. 524). Plaintiff stopped receiving care at NorthKey in January 2007. In his termination summary and annual update, his treaters noted a "[l]ong Hx of drug/alcohol abuse" and problems with "[p]oor motivation" and "compliance [with] therapy." (Tr. 595, 621). Plaintiff returned to NorthKey in June 2010, and by August and September 2010 his mood was improved and euthymic, and he was logical and cooperative without suicidal or homicidal ideations, and he had significantly increased his social and vocational activity. (Tr. 650, 654, 656).

In September 2010, Plaintiff was hospitalized complaining of suicidal and homicidal thoughts.  Plaintiff reported that he called the suicide hotline after finding out he would likely return to jail for failing to pay child support following a court appearance that day. (Tr. 684).  At the time of his admission on September 14, 2010, Plaintiff's GAF score was 25, indicating serious impairment; he was taking no psychotropic medications; and he had "+SI to avoid going to jail." (Tr. 685-86). *DSM-IV-TR* at 34. During his six day hospitalization, Plaintiff received psychiatric care from Dr. Marett and

---

[1] A GAF score of 80 indicates "no more than slight impairment in social, occupational, or school functioning" and that "[i]f symptoms are present, they are transient and expectable reactions to psycho-social stressors . . . ." *DSM-IV-TR* at 34.

Dr. Curell.  Plaintiff was treated for bipolar disorder and prescribed Lithium.  Discharge notes from Dr. Curell, indicate that Plaintiff tolerated Lithium well and showed marked improvement. Dr. Curell's notes reflect that Plaintiff's GAF score had increased to 70 by the time of discharge. (Tr. 688). The discharge notes also stated in relevant part:

> The patient was cooperative with exam.  He was able to sit and have conversation without pressured speech, nor any other symptoms of mania.  Overall he said his mood was good. His effect was also brightened from admission. His thought processes were clear and organized. He was able to lay out a future plan for getting a job as well as his housing situations.  He did not have any perceptual abnormality. There were no suicidal or homicidal thoughts.  Cognition was fair.  Insight and judgment were also fair.

(Tr. 689-90).

In September 2011, Plaintiff was evaluated by Dr. Lester. (Tr. 875). Dr. Lester's mental status examination findings were that Plaintiff had normal speech, an appropriate range of affect, no overt signs of anxiety, no homicidal ideations, and no evidence of delusions; although in the past he had sometimes thought he heard someone call his name. (Tr. 873-74). Plaintiff successfully recalled six digits forward and three backward, correctly performed simple mental arithmetic and a serial three task, and exhibited appropriate pace and persistence. (Tr. 876). Dr. Lester assessed Plaintiff's current GAF score as 60, which corresponds to moderate symptoms.

Thereafter, Dr. Rivera, a state agency psychologist, reviewed Plaintiff's medical record and determined that Plaintiff's mental impairments have resulted in moderate restriction of her activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and

one or two repeated episodes of decompensation, each of extended duration.  (Tr. 134-135).

The record also includes treatment notes from Talbert House from November 2011 through 2012, where Plaintiff treated with Dr. Shah, as well as with therapists Ms. O'Brien and Ms. Landstacy.  In March 2013, Dr. Shah completed a mental source statement relating to Plaintiff's work-related limitations wherein he reported that Plaintiff has moderate loss, marked loss, and extreme loss in various work-related activities.  In this regard, Dr. Shah merely checked off boxes on a questionnaire indicating that Plaintiff had marked and extreme limitations in certain categories, yet provided no explanation of her reasoning. (Tr. 942-43). In the "Explanation of Your Assessment" section, rather than detailing findings that supported her assessment, Dr. Shah wrote, "I have worked with this patient since 7/21/12[.] I have seen him 3 times[.]. Based on my limited time working with him these are my findings." (Tr. 943).

During Plaintiff's January 2013 consultative evaluation, Dr. Berg observed that Plaintiff appeared depressed but was cooperative; he had normal speech and thought processes; cognitively, his pace was average to, at times, below average; and he showed no flight of ideas. (Tr. 931-32). Plaintiff reported that Lithium provided some benefit and he had not had auditory hallucinations over the last year or two. (Tr. 932). Plaintiff's memory processes were satisfactory, revealing no impairment, and he was able to maintain attention and concentration during the examination and had an average pace. (Tr. 933, 935). Based on these clinical findings, Dr. Berg found one marked limitation - Plaintiff's "ability to interact appropriately with supervisors." (Tr. 22). Dr. Berg otherwise opined that Plaintiff had no limitations on his ability to understand, remember,

and carry out simple instructions; only mild limitations on his ability to make judgments on simple work-related decisions, understand, remember, and carry out complex instructions, and interact appropriately with the public; and moderate limitations on his ability to make complex work-related decisions and interact appropriately with co-workers and respond appropriately to usual work situations and changes in a routine setting. (Tr. 937-38).

In evaluating the opinion evidence, "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner of Social Sec.,* 581 F.3d 399, 406 (6th Cir.2009) (quoting *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir.2004). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Wilson,* 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2).

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion." 20 C.F.R. § 404.1527(d)(2); *but see Tilley v. Comm'r of Soc. Sec.,* No. 09–6081, 2010 WL 3521928, at *6 (6th Cir.Aug.31, 2010) (indicating that, under *Blakely* and the good reason rule, an ALJ is not required to explicitly address all of the

six factors within 20 C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence within the written decision).

In formulating Plaintiff's mental RFC, the ALJ gave "some weight" to the "office treatment records at NorthKey Community Care covering the timeframe from April 2002 to September 2010." (Tr. 21, 345-663). The ALJ determined that the opinions expressed in these records were "supported by medical signs/findings on exam" and were "consistent with other medical evidence." (Tr. 21).

The ALJ gave "great weight" to the opinions of Dr. Marett and Curell who treated Plaintiff during Plaintiff's psychiatric hospitalization in September 2010. (Tr. 21). As noted above, Dr. Curell's notes reflect that Plaintiff's GAF score had increased to 70 by the time of discharge (Tr. 688), indicating mild symptoms. *DSM-IV-TR* at 34. In light of Plaintiff's well-documented rapid improvement with treatment, the ALJ concluded that the psychiatric treatment notes were "supported by medical signs/findings on exam" and were "consistent with other medical evidence." (Tr. 21).

The ALJ also gave "great weight" to the opinions of consultative examiners Drs. Berg and Lester, as well as reviewing psychologist Dr. Rivera. (Tr. 21-22). All of whom reported mild to moderate work-related limitations, except for a marked limitation in the ability to interact appropriately with supervisors. The ALJ concluded that their opinions were "supported by medical signs/findings on exam." (Tr. 22). Further, because their opinions were consistent with other evidence the ALJ discussed, including NorthKey treatment records and the state agency reviewing psychologist's opinion, the ALJ concluded that the opinions of Drs. Lester and Berg were "consistent with other medical evidence of record." (Tr. 22).

The ALJ gave "some weight" to the findings of Dr. Shah, Plaintiff's treating psychiatrist. The ALJ determined that Dr. Shah's findings were unsupported and inconsistent with the record evidence, including the findings of Dr. Lester and Dr. Berg.

Plaintiff argues that the ALJ's evaluation of Dr. Shah's assessment failed to properly consider the factors outlined in 20 CFR § 404.1527, improperly relied on the findings of Dr. Lester and Dr. Berg, and improperly relied on GAF scores. Plaintiff's contentions are unavailing.

Here, the undersigned finds that the ALJ reasonably concluded that Dr. Shah's opinion was "not well supported by medically acceptable clinical findings and laboratory diagnostic techniques" and was "inconsistent with other substantial evidence." (Tr. 21). *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

As noted above, Dr. Shah merely checked off boxes on a questionnaire indicating that Plaintiff had marked and extreme limitations in certain categories, yet provided no explanation of her reasoning. (Tr. 942-43). *See 20 C.F.R. § 404.1527(d) (3)* ("the better an explanation a source provides for an opinion, the more weight we will give that opinion.").  Furthermore, in the "Explanation of Your Assessment" section, rather than detailing findings that supported her assessment, Dr. Shah merely wrote, "I have worked with this patient since 7/21/12[.] I have seen him 3 times[.]. *See Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir.2001) ("[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.") (internal quotation omitted). See also 404.1527(d)(2) (ALJ

11

must considered the treatment relationship, including the length of treatment, frequency of examination, and nature and extent of relationship).

Furthermore, as noted by the Commissioner, the ALJ also reasonably concluded that Dr. Shah's opinion was "inconsistent with other substantial evidence." (Tr. 21). Notably, the ALJ cited the opinions of Dr. Berg and Dr. Lester as "example[s]" of "other substantial evidence" that Plaintiff was not as limited as Dr. Shah indicated and noted that Dr. Lester found a GAF score of 60, which reflects only moderate symptoms. (Tr. 21-22). However, the ALJ also considered "other substantial evidence" inconsistent with Dr. Shah's opinion. The ALJ discussed that treatment notes from Talbert House showed a GAF score of 55, which was not work-prohibitive. (Tr. 22). The ALJ also indicated that "the series of mental health treatment records . . . show a modicum of success in treating [Plaintiff's] various mental problems." (Tr. 23). Elsewhere in his decision, the ALJ provided additional examples of evidence inconsistent with disability, such as the fact that NorthKey Community Care treatment notes spanning from 2002 to 2010 showed "some improvement" (Tr. 17), and 2013 Talbert House treatment notes indicated Plaintiff had "no specific thoughts to harm himself or others." (Tr. 17, 945).

In light of the foregoing, the undersigned finds that the rationale given by the ALJ for the weight he assigned to Dr. Shah's assessment shows that the ALJ properly considered the factors outlined in 20 C.F.R. § 404.1527(d)(2) and is supported by the evidence of record. Because the ALJ provided legitimate reasons for not giving great or controlling weight to Dr. Shah's opinions, substantial evidence supports the Commissioner's decision. *See Nejat v. Comm'r of Soc. Sec.,* 359 F. App'x 574, 578 (6th Cir.2009) (The ALJ "provided sufficient reasons ... [t]hough brief," for rejecting treating

physician's opinion); *Gaskin v. Comm'r of Soc. Sec.,* 280 F. App'x 472, 476 (6th Cir.2008) ("Unlike the cases where we have held that the ALJ failed to state 'good reasons' for rejecting the treating physician's opinion, here the ALJ did not merely cast aside the treating physician's opinion without explanation.").[2]

Additionally, the ALJ properly afforded significant weight to the opinions of state agency medical consultants. An ALJ may rely on the opinions of the state agency physicians who reviewed plaintiff's file. *See* 20 C.F.R. §§ 404.1527(f)(2)(i) and 416.927(f)(2) (i) (state agency medical consultants and other program physicians are "highly qualified physicians ... who are also experts in Social Security disability evaluation"). S*ee also McGrew v. Comm'r of Soc. Sec.,* 343 F. App'x 26, 32 (6th Cir.2009) (administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether you are disabled). 20 C.F.R. § 404.1527(f)(2)(i); see also *Hash v. Comm'r of Soc. Sec.,* 309 F. App'x 981, 989 (6th Cir.2009)."); *Combs v. Comm'r of Soc. Sec.,* 459 F.3d 640, 651 (6th Cir.2006) (*en banc*) (affirming ALJ's decision adopting reviewing physician's opinion over treating physician's opinion).

---

[2] Plaintiff also argues that the ALJ improperly relied on GAF scores in evaluating the opinion evidence. In this regard, Plaintiff cites *DeBoard v. Commissioner of Social Security*, 211 F. App'x 411 (6th Cir. 2006) for the principle that GAF scores have no direct correlation to the severity requirements of the mental disorders listings. However, as noted by the Commissioner, the ALJ did not rely on GAF scores when evaluating the mental disorders listings. (Tr. 17-18). As outlined above, the ALJ properly considered the record as a whole when determining Plaintiff's RFC. Furthermore, the Sixth Circuit has explicitly recognized that "a GAF score may be of considerable help to the ALJ in formulating the RFC . . . ." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). GAF scores allow "a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kennedy v. Astrue*, 247 F. App'x 761, 766, (6th Cir.2007). Thus, the ALJ permissibly considered Plaintiff's GAF scores when evaluating the degree of impairment caused by his symptoms.

2. *ALJ's credibility finding*

Plaintiff's statement of errors also challenges the sufficiency of the ALJ's decision concerning his credibility, arguing that he should have found him entirely credible and that he did not support his limited number of reasons with substantial evidence. For the reasons stated below, the undersigned finds that the ALJ's credibility determination is supported by substantial evidence.

The regulations provide that the RFC is the most a claimant can still do despite his or her physical and mental limitations. See 20 C.F.R. § 404.1545(a). At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC. See 20 C.F.R. § 404.1546(c). The ALJ assesses the claimant's RFC assessment by evaluating all the relevant evidence, including the medical evidence and the claimant's statements concerning his or her abilities and limitations. See 20 C.F.R. § 404.1545(a)(3). It is the ALJ's obligation to assess the claimant's RFC based upon the record in its entirety, and it is the ALJ's duty as the fact finder to resolve conflicts in the evidence. *See* SSR 96–5p, 1996 WL 374183, at *5 (1996); 20 C.F.R. §§ 404.1546, 404.1527(c).

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Comm'r of Social Sec.,* 486 F.3d 234, 247 (6th Cir.2007) (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir.2001).

The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v.*

14

*Sec. of HHS,* 753 F.2d 517, 519 (6th Cir.1985). In this regard, Social Security Ruling

96–7p explains:

> In determining the credibility of the individual's statements, the adjudicator
> must consider the entire case record, including the objective medical
> evidence, the individual's own statements about symptoms, statements
> and other information provided by treating or examining physicians or
> psychologists and other persons about the symptoms and how they affect
> the individual, and any other relevant evidence in the case record. An
> individual's statements about the intensity and persistence of pain or other
> symptoms or about the effect the symptoms have on his or her ability to
> work may not be disregarded solely because they are not substantiated by
> objective medical evidence.

SSR 96–7p.

In addition, the ALJ's decision "must contain specific reasons for the finding on

credibility, supported by the evidence in the case record, and must be sufficiently

specific to make clear to the individual and to any subsequent reviewers the weight the

adjudicator gave to the individual's statements and the reasons for that weight." *Id.* The

ALJ's credibility decision must also include consideration of the following factors: 1) the

individual's daily activities; 2) the location, duration, frequency, and intensity of the

individual's pain or other symptoms; 3) factors that precipitate and aggravate the

symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the

individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other

than medication, the individual receives or has received for relief of pain or other

symptoms; 6) any measures other than treatment the individual uses or has used to

relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20

minutes every hour, or sleeping on a board); and 7) any other factors concerning the

individual's functional limitations and restrictions due to pain or other symptoms. See 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96–7p.

While an ALJ may properly consider a Plaintiff's inconsistent statements and other inconsistencies in the record, the ALJ must also consider other factors listed in SSR 96–7p, and may not selectively reference a portion of the record which casts Plaintiff in a capable light to the exclusion of those portions of the record which do not. *See Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 240–41 (6th Cir.2002). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir.2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.,* 375 F.3d at 392.

Here, the ALJ explained that he found Plaintiff "partially, but not fully credible" because Plaintiff's allegations "appeared to be somewhat exaggerated." (Tr. 20). The ALJ noted that Plaintiff had alleged that his mental impairments caused him to isolate himself from others friends, yet he had a steady relationship with a girlfriend. (Tr. 19-20, 53, 305-06, 898, 875, 931). Plaintiff told Dr. Berg that his girlfriend "often calls and visits," and he goes out with her. (Tr. 931). The ALJ also noted that Plaintiff reported that he had "numerous friends and interpersonal relationships." (Tr. 915). Dr. Lester also included seeing a number of acquaintances as one of Plaintiff's daily activities. (Tr. 20, 875).

The ALJ also considered Plaintiff's inconsistent reports about his substance abuse. (Tr. 20). Notably, Plaintiff testified that he smoked marijuana "a few times," the last time being three to four years ago; i.e., 2009 to 2010. (Tr. 20, 51). Plaintiff testified

16

that the last time he smoked marijuana before that was probably five years ago. (Tr. 20, 51). He stated it was "[j]ust one time", and before that, "it was probably a couple years," as he "was never a regular pot smoker." (Tr. 52). He denied ever using any drugs than marijuana. (Tr. 20, 52). However, in contrast with his testimony, the ALJ noted that Talbert House treatment notes reflected that Plaintiff continued to occasionally use THC (marijuana). (Tr. 911).

The ALJ's credibility assessment also considered that Plaintiff's allegations of difficulty sleeping and fatigue were inconsistent with the wide range of his daily activities, which included house and yard work, shopping, talking with others, using a computer, watching television, visiting his girlfriend, and keeping a journal. (Tr. 18, 21, 37, 45, 298, 304, 656, 931). The record indicates that Plaintiff self-published a book of poetry (Tr. 439, 441), and his psychologist at NorthKey observed that he did not "seem especially motivated to achieve a stable lifestyle" as he was "more interested in writing and doing 'art'-related activities." (Tr. 437). The ALJ's consideration of Plaintiff's activities in spite of his claims of disabling symptoms was appropriate. *See* 20 C.F.R. § 404.1529(c)(3)(i) (authorizing an ALJ to consider activities when evaluating pain and functional limitations); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 (6th Cir. 1986) (ALJ appropriately considered daily activities of claimant who alleged psychological impairment).

Contrary to Plaintiff's contentions, the ALJ properly considered the requisite factors in making his credibility determination.[3] This Court must affirm so long as

---

[3] Plaintiff further argues that the ALJ should not have discounted his testimony about his work-related abilities because his testimony was consistent with the medical evidence authored by several counselors/social workers, Ms. O'Brien, Ms. Landstacy, and Stuart Rayner LSW of Mental Health Access

substantial evidence exists in the record as a whole to support the ALJ's decision, even if substantial evidence also can be found to support a contrary conclusion as to the credibility of a plaintiff's complaints. Although this Court may have taken another view of these facts and decided them more favorably, the ALJ was well within his zone of choice to decide them against Plaintiff's claim. *Felisky,* 35 F.3d at 1035. Accordingly, reviewing the record as a whole, the undersigned concludes that substantial evidence exists to affirm the ALJ's credibility finding.

    *3. Vocational Issues*

    Last, Plaintiff alleges that the ALJ improperly relied on the testimony of the vocational expert. Specifically, Plaintiff argues that the vocational expert (VE) failed to testify about the number or locations of the two jobs the VE identified, hand packager and merchandise marker. As such, Plaintiff contends that the there was no finding that these jobs existed in significant number. Plaintiff's contention lacks merit.

    As noted by the Commissioner, the ALJ made a Step Four finding that Plaintiff was capable of performing his past relevant work as a hand packager. (Tr. 23-24). *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f). A claimant bears the burdens of production and persuasion at the first four steps of the sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S.137, 146 n.5 (1987) (claimant bears burden of proof at steps one through four of the sequential evaluation); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). "[T]he claimant bears the burden of proving . . . that she is precluded from performing her past relevant work . . . ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469,

---

Point. As noted by the ALJ, as counselors and social workers, these individuals fell in the category of "other sources" as defined in 20 C.F.R. § 404.1513 (Tr. 21). As such, their assessments were not "medical opinions" subject to the evaluation requirements of 20 C.F.R. § 404.1527.

474 (6th Cir. 2003). It is not until Step Five when the burden shifts to the Commissioner to establish the claimant's ability to do other work. *See Foster*, 279 F.3d at 354. At step five, the Commissioner assesses whether a claimant is able to adjust to other work existing in significant numbers in the national economy in light of her residual functional capacity, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), (g). Since the ALJ found Plaintiff not disabled at Step Four, he was not required to assess whether a significant number of hand packager jobs existed in the national economy.

In any event, the ALJ made an alternative Step Five finding that Plaintiff could perform work existing in significant numbers in the regional and national economy. (Tr. 24). The VE testified that an individual with Plaintiff's mental limitations and no exertional limitations would be able to perform the requirements of hand packager (1841)(jobs in the regional economy) and merchandise marker (1801)(jobs in the regional economy). (Tr. 24, 58-60). If such an individual was further limited to sitting three hours at a time and standing and walking one hour at a time, the VE testified that the number of hand packager and merchandise marker positions would fall by approximately 25 percent. (Tr. 61).

Furthermore, the Sixth Circuit has held that a hypothetical question must only include a claimant's credible impairments and limitations. *See Smith v. Halter,* 307 F.3d 377, 378 (6th Cir.2001) (emphasis added); *Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1235 (6th Cir.1993). Here, the ALJ's hypothetical question was supported by the medical record and other evidence, and Plaintiff has not shown that he had limitations greater than those reflected in the ALJ's hypothetical question and eventual RFC finding. However, as discussed above, the medical evidence did not

support these alleged limitations, and there is no credible medical opinion that shows that Plaintiff had greater limitations than the ALJ found.

Accordingly, the ALJ's decision is substantially supported in this regard.

**III. Conclusion and Recommendation**

For the reasons explained herein, **IT IS RECOMMENDED THAT**: 1) The decision of the Commissioner to deny Plaintiff's benefits be **AFFIRMED** because it is supported by substantial evidence in the record as a whole; and 2) As no further matters remain pending for the Court's review, this case be **CLOSED.**

                                        _/s Stephanie K. Bowman_
                                        Stephanie K. Bowman
                                        United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

JEFFERY SHARP,                                    Case No. 1:14-cv-749

        Plaintiff,                                    Barrett, J.
                                                        Bowman, M.J.

   v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

21